Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:17-bk-10378-VK |
| KANDY KISS OF CALIFORNIA, INC., | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE PROVINCE, INC. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HOWARD M. EHRENBERG IN SUPPORT THEREOF** |

DATE:    March 26, 2020
TIME:    2:00 p.m.
PLACE:  Courtroom "301"

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2696037v1

1  **TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY**

2  **JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE,**

3  **CREDITORS, AND INTERESTED PARTIES:**

4  <u>**MOTION**</u>

5  Through his "Chapter 7 Trustee's Motion for Order Authorizing Compromise

6  of Controversy Re Province, Inc. Pursuant to Rule 9019 of the Federal Rules of

7  Bankruptcy Procedure; Memorandum of Points and Authorities; Declaration of Howard M.

8  Ehrenberg in Support Thereof" (the "Motion"), Howard M. Ehrenberg (the "Trustee"), the

9  duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Kandy

10  Kiss of California, Inc. (the "Debtor") hereby seeks, among other things, an order

11  authorizing and approving, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy

12  Procedure, and Local Bankruptcy Rule 9013, that certain "Settlement Agreement and

13  Mutual General Release" (the "Agreement") by and between the Trustee, on the one

14  hand, and Province, Inc., a Nevada corporation ("Province"), on the other hand, pursuant

15  to which the parties have agreed to compromise the disputes between the Trustee and

16  Province, the Debtor's pre-petition and former assignee for the benefit of creditors.  In

17  sum, according to the Agreement, Province shall pay the Trustee the total sum of

18  $100,000 from the $346,350.33 fee Province contends it earned and is entitled to retain

19  pursuant to the terms of the general assignment between Province and the Debtor.  A

20  true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated

21  herein by reference.

22  This Motion is made and based upon the moving papers, the attached

23  Memorandum of Points and Authorities and the supporting Declaration of Howard M.

24  Ehrenberg, the pleadings filed in the Debtor's case, all judicially noticeable facts, the

25  arguments and representations of counsel, and any oral or documentary evidence

26  presented at the time of the hearing.

27  **WHEREFORE** the Trustee respectfully requests that the Court enter an

28  order:

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          (1)     granting this Motion;

2          (2)     authorizing and approving the Agreement pursuant to Rule 9019(a)

3    of the Federal Rules of Bankruptcy Procedure; and

4          (3)     granting such other and further relief as this Court deems just and

5    proper under the circumstances.

6    DATED: February 26, 2020                    **Sulmeyer**Kupetz
                                                A Professional Corporation

7

8

9                                               By: /s/ *Daniel A. Lev*
                                                    Daniel A. Lev
10                                                  Attorneys for Howard M. Ehrenberg, Chapter 7
                                                    Trustee

11

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAL 2696037v1                                   -3-

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

## PREFATORY STATEMENT

4    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157

5  and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue

6  of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7  The statutory predicate for the relief sought herein is 11 U.S.C. §§ 105(a) and Rule

8  9019(a) of the Federal Rules of Bankruptcy Procedure.

9

### II.

10

## SUMMARY OF REQUESTED RELIEF

11    On January 16, 2017, prior to the commencement of an involuntary petition

12  against the Debtor, the Debtor executed an "Assignment for the Benefit of Creditors" in

13  favor of Province, as assignee, dated January 16, 2017.  The next day, Province and Zita

14  Apparel, Inc., a California corporation ("Zita") entered into that certain "Asset Purchase

15  Agreement" (the "Zita Purchase Agreement"), pursuant to which, among other things, Zita

16  acquired certain assets of the Debtor's assignment estate for the total purchase price of

17  $350,000.  Province contends that, pursuant to the terms of general assignment

18  documents, it earned a fee of $346,350.33.

19    After investigating and analyzing the general assignment documents and

20  the Zita transaction, the Trustee determined that there were grounds to recover a portion

21  of the Province fee.  However, rather than commence a formal adversary proceeding, the

22  Trustee and Province engaged in negotiations in an effort to resolve the Trustee's

23  concerns with respect to the fee.  As a result of these discussions, the Trustee and

24  Province now have entered into a formal settlement agreement according to which

25  Province shall pay the estate $100,000 of the $346,350.33 being held by Province.  The

26  parties will also exchange limited releases.  The Trustee now seeks approval of the

27  compromise embodied in the settlement agreement, as it is his belief that the settlement

28  satisfies each of the prerequisites adopted by the Ninth Circuit.

III.

## RELEVANT BACKGROUND

As noted, Province was the assignee for the benefit of creditors of the Debtor pursuant to an "Assignment for the Benefit of Creditors" (the "General Assignment") executed by and between the Debtor, as assignor, and Province, as assignee, dated January 16, 2017.  On January 17, 2017, Province, as assignee and seller, and Zita, as buyer, entered into the Zita Purchase Agreement, pursuant to which, among other things, Zita acquired a sub-set of assets of the Debtor's assignment estate for the sum of $350,000.  Subsequent to the execution of the Zita Purchase Agreement, Province and Zita consummated the transaction set forth in the Zita Purchase Agreement.

Shortly thereafter, on February 14, 2017, petitioning creditors Apex Logistics International LAX Inc., High Hope Trading (HK) Limited, IDFIX, Inc., Kucuhead, Shol Inc., Texking Trading Ltd., Tu Pacific, LLC, and RM Global LLC (the "Petitioning Creditors"), filed an involuntary petition for relief against the Debtor under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") commencing this case (the "Case") in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court").  On March 14, 2017, creditor RM Global Textile Inc. filed a joinder to the involuntary as an additional petitioning creditor [Docket No. 20].  As a result, on February 15, 2017, the clerk of the court issued an involuntary summons [Docket No. 3].

On March 8, 2017, Province filed a motion to dismiss the Case (the "Motion to Dismiss") [Docket No. 16].  On April 7, 2017, the Petitioning Creditors filed an opposition to the Motion to Dismiss [Docket No. 30].  On May 8, 2017, the Court entered an order denying, in part, the Motion to Dismiss [Docket No. 46].  On May 31, 2017, the Court entered a scheduling order regarding the remaining issues in the Motion to Dismiss [Docket No. 51].  On September 13, 2017, the Debtor and Province filed their consent to

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    entry of an order for relief in this Case [Docket No. 61].  On September 19, 2017, the

2    Court entered its "Order for Relief" (the "Order for Relief") [Docket No. 62].

3        On September 21, 2017, the Office of the United States Trustee (the

4    "OUST") appointed David K. Gottlieb (the "Predecessor Trustee") as the interim chapter 7

5    trustee in the Case in accordance with 11 U.S.C. § 701(a) [Docket No. 68].  On October

6    4, 2017, the Predecessor Trustee filed a "Supplemental Statement of Disinterestedness"

7    (the "Supplement") pursuant to which the Predecessor Trustee disclosed that he

8    subleased certain office space from Province, the aforementioned assignee.

9        On October 6, 2017, at the initial Section 341(a) creditor's meeting, the

10    Petitioning Creditors unanimously elected Howard M. Ehrenberg (the "Trustee") as the

11    trustee in accordance with 11 U.S.C. § 702.  Accordingly, on October 12, 2017, the

12    OUST filed its "Report of Disputed Election of Trustee" (the "OUST Report").  Pursuant to

13    Rule 2003(d)(2) of the Federal Rules of Bankruptcy Procedure, a motion for the

14    resolution of the dispute was required to be filed no later than fourteen days following the

15    date of the OUST Report.  On October 26, 2017, the Petitioning Creditors timely caused

16    to be filed their "Notice of Motion and Motion of Voting Creditors to (1) Certify Election of

17    Howard M. Ehrenberg as Chapter 7 Trustee, or (2) Remove David K. Gottlieb From

18    Acting As Chapter 7 Trustee" (the "Resolution Motion") [Docket No. 87].  The Resolution

19    Motion sought to certify the Trustee as the permanent trustee based upon the results of

20    the election held on October 12, 2017.  Rather than contest the Resolution Motion,

21    thereby causing further delay to creditor recovery, the Predecessor Trustee elected to

22    withdraw without conceding any of the allegations of the Resolution Motion.  As such, on

23    November 3, 2017, the Predecessor Trustee filed his "Notice of Withdrawal of

24    Appointment of Trustee" [Docket No. 90].

25        As a result, on November 6, 2017, the OUST filed its "Status Report of

26    United States Trustee on Report of Disputed Election" (the "Status Report") [Docket No.

27    92].  In the Status Report, the OUST indicated that, in light of the Predecessor Trustee's

28    withdrawal, the OUST would proceed with the appointment of the Trustee as the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  permanent trustee.  On the same day - November 6, 2017 - notice of the Trustee's

2  appointment and qualification under 11 U.S.C. § 322 was filed by the OUST [Docket No.

3  93].

4             As noted earlier, subsequent to the Trustee's appointment, Province

5  remitted the balance of funds from the Debtor's assignment estate to the Trustee,

6  provided, however, that Province withheld the total amount of $346,350.33 in its trust

7  account which Province argued represented the fee due and owing to Province pursuant

8  to the General Assignment (the "General Assignment Fee").  Specifically, pursuant to the

9  General Assignment, the Debtor agreed as follows:  that the term "a reasonable fee to

10  Assignee" is defined as, and includes, the following:

11             (a) an administration fee computed on the basis of the total

12             monies distributed in connection with the General

13             Assignment and for the assembly, inventorying, collection,

14             and liquidation of the assets assigned, in accordance with

15             the following schedule, to wit: an initial retainer of $35,000,

16             and a fee of 15% total monies distributed shall apply; (b) the

17             reimbursement of all expenses incurred as a result of

18             Province's administration out of the proceeds generated

19             therefrom; (c) a further fee equal to any and all interest

20             earned and received by Province on any trust and other

21             funds in its hands and arising from the General Assignment;

22             and (d) in addition to all of the foregoing, when applicable, in

23             the opinion of the Board of Directors of Province, an

24             additional and reasonable fee may be taken for special,

25             unusual, or extraordinary services actually performed by

26             Province in connection with the operation, management,

27             preservation, or administration of the property of the Debtor's

28             assignment estate, and, in this connection the Board of

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    Directors of Province, or the President of Province, is given

2    the right and discretion to determine the nature and extent of

3    such special, unusual, or extraordinary services, and the

4    amount of additional fees in connection therewith.

5    Moreover, the General Assignment further provides that the fees due and

6    owing to Province shall be paid from the property assigned, and from all of the proceeds

7    thereof and from any interest, income, and increments and any additions thereto.

8    The Trustee investigated the terms of the General Assignment, the Zita

9    Purchase Agreement, and Province's contentions regarding the services it provided and

10    the computation of the General Assignment Fee, and, based on his investigation, the

11    Trustee believed that there were grounds to seek a recovery of a portion of the

12    $346,350.33 fee.  However, rather than expend limited estate resources to formally seek

13    a recovery of the disputed portion of the General Assignment Fee, the Trustee and

14    Province engaged in good faith and constructive negotiations to resolve the Trustee's

15    disputes.

16    In sum, in order to avoid the uncertainties and expense of litigation, the

17    Trustee and Province have agreed that Province shall return the sum of $100,000 to the

18    Trustee, retaining the sum of $246,350.33 in full and final satisfaction of its General

19    Assignment Fee.  The proposed settlement eliminates the need for any litigation

20    regarding the General Assignment Fee, and, as such, the Trustee believes the

21    Agreement should be approved by the Court.[1]

22

23

24

25

26

_____

27    [1] The foregoing is merely a summary of the salient terms of the Agreement, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.  Interested parties are encouraged to read the Stipulation in its entirety.

28

# IV.

## THE COURT SHOULD APPROVE THE AGREEMENT UNDER RULE 9019 OF THE

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in relevant part:

> (a)    On motion by the trustee and after notice and a
>
> hearing, the court may approve a compromise or settlement.
>
> Notice shall be given to creditors, the United States trustee,
>
> the debtor, and indenture trustees as provided in Rule 2002
>
> and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements". In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the [chapter 7 trustee] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims". In re A&C Properties, Inc., 784 F.2d 1377, 1380-81 (9th Cir. 1986). Accordingly, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised. See In re Walsh Constr., Inc., 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See A&C Properties, 784 F.2d at 1381; see also In re Am. Bldg. Storage, 285 Fed. Appx. 375 (9th Cir. 2008).

Consideration of a settlement does not require the court to determine whether a settlement presented is the best one that could possibly have been achieved. Instead, the court need only canvass the issues to determine whether the settlement falls "*below the lowest point in the zone of reasonableness*". Newman v. Stein, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added); see also In re Teltronics Services, Inc., 762 F.2d 185, 189 (2d Cir. 1985); In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), cert.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  denied, 464 U.S. 822, 104 S. Ct. 88, 78 L. Ed. 2d 96 (1985).  Finally, although the court

2  should give deference to the reasonable views of creditors, "objections do not rule.  It is

3  well established that compromises are favored in bankruptcy".  In re Lee Way Holding

4  Co., 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

5      Traditionally, in evaluating whether to approve a compromise, courts in the

6  Ninth Circuit must consider the following:

7          (a)      The probability of success in litigation;

8          (b)      the difficulties, if any, to be encountered in the matter of collection;

9          (c)      the complexity of the litigation involved and the expense,

10  inconvenience and delay necessarily attending it; and

11          (d)      the paramount interest of the creditors and a proper deference to

12  their reasonable views.

13  A&C Properties, 784 F.2d at 1381.

14      In considering these factors, courts are guided by two principles.  First, as

15  noted earlier, "the law favors compromise".  In re Blair, 538 F.2d 849, 851 (9th Cir. 1976).

16  Compromises are favored in bankruptcy, and have become "a normal part of the process

17  of reorganization".  Protective Committee for Independent Stockholders of TMT Trailer

18  Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (quoting

19  Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130, 60 S. Ct. 1, 84 L. Ed. 110

20  (1939)).  Second, as highlighted earlier, a compromise should be approved unless it

21  "fall[s] below the lowest point in the range of reasonableness".  W.T. Grant, 699 F.2d at

22  608.  As the court in W.T. Grant aptly commented:

23          [The] responsibility of the bankruptcy judge, and ours upon

24          review, is not to decide the numerous questions of law and

25          fact raised by the appellants but rather to canvass the issues

26          and see whether the settlement 'fall[s]' below the lowest

27          point in the range of reasonableness. . .

28  Id., at 608.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1     Under express provisions of the Bankruptcy Code, a trustee is vested with

2   the standing and authority to seek compromises of legal and factual disputes.  As such,

3   settlements which have been negotiated by a trustee are entitled to deference.  See In re

4   Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute

5   their judgment for that of the trustee).  Moreover, when considering these factors, the

6   court need only canvass the issues, "a mini trial on the merits is not required".  Burton v.

7   Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).

8     Here, despite the fact that each of the four A&C Properties factors are not

9   necessarily implicated by the compromise with Province, the Trustee believes that the

10  terms of the proposed Agreement are fair, reasonable, and in the best interests of the

11  Debtor's creditors and estate for several reasons.

12   **A.     The Probability of Success in Litigation**

13     The first factor to evaluate whether a settlement is fair and equitable is the

14  probability of success in the litigation.  A&C Properties, 784 F.2d at 1381.  A precise or

15  exact judicial determination of the likely outcome is not required because that would

16  defeat the purpose of compromising the litigation.  In re Telesphere Communications,

17  Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994); In re Energy Coop., Inc., 886 F.2d 921,

18  929 (7th Cir. 1989) (quoting In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir.

19  1979)).  In the Ninth Circuit a bankruptcy court need not conduct an exhaustive

20  investigation into the validity of the asserted claim, but rather '[i]t is sufficient that, after

21  apprising itself of all facts necessary for an intelligent and objective opinion concerning

22  the claim's validity, the court determines that either (1) the claim has a 'substantial

23  foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's

24  litigation is doubtful".  United States of America v. Alaska National Bank (Matter of Walsh

25  Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).

26     The Ninth Circuit cited Walsh approvingly in A&C Properties, noting that the

27  purpose of a compromise agreement is to allow the trustee and creditors "to avoid the

28  expenses and burdens associated with litigating sharply contested and dubious claims",

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    and that the "law favors compromise and not litigation for its own sake". <u>Blair</u>, 538 F.2d

2    at 851.

3              Here, the Trustee contends, without limitation, that the settlement is fair and

4    reasonable, in the best interests of the estate, and made according to the Trustee's

5    sound business judgment.  Specifically, the Trustee contends, without limitation, that

6    based on the limited amount of services Province provided, and the subsequent series of

7    events leading to the Trustee's appointment, Province was not entitled to an earned fee

8    of $346,350.33.  Province disputes the Trustee's contentions and asserts that the

9    General Assignment Fee is contractual in nature, is reasonable and appropriate based on

10   the services rendered by Province as assignee, and the fee was accurately calculated

11   according to the terms of the General Assignment documents.  While the Trustee was

12   confident in his position, given the defenses being asserted by Province, the costs of

13   commencing and prosecuting an action through trial would be cost-prohibitive.

14             In satisfying this first element of the four-part <u>A&C Properties</u> test, the

15   burden is not on a trustee to conclusively establish that a defendant would be successful

16   at a trial on the issues raised in an action, as that would defeat the purpose of settlement

17   and would eliminate any cost savings from the settlement.  Rather, all that a trustee is

18   required to demonstrate is that, to the reasonable satisfaction of the court, all things

19   being considered, it is prudent to eliminate the risks of litigation to achieve specific

20   certainty, though it might be considerably less, or more, than were the case fought to the

21   bitter end.  See <u>In re Aloha Racing Foundation, Inc.</u>, 257 B.R. 83 (Bankr. N.D. Ala. 2000).

22             In fact, at least one court has found that a settlement reached by a trustee

23   could be approved even after the court had decided to rule for the trustee on a contested

24   matter.  See <u>In re Dalen</u>, 259 B.R. 586 (Bankr. W.D. Mich. 2001).  In <u>Dalen</u>, the trustee

25   sought approval of a settlement after the court had already decided to rule for the trustee,

26   such that the estate would have profited if the settlement were rejected.  The ultimate

27   issue for the court, however, was whether the trustee exercised reasonable judgment in

28   entering into the settlement based upon information then in her possession.  As long as

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    the court is able to make this determination, and finds that the trustee has fulfilled her

2    fiduciary duty to the estates, the fact that creditors are objecting to the settlement is

3    irrelevant to the court's determination under Rule 9019(a).

4          Here, there is no question that the Trustee has fulfilled his fiduciary duties

5    to the estate by not only aggressively pursuing the recovery of a portion of the General

6    Assignment Fee, but by entering into the Agreement.  In light of the fact that the Trustee

7    will receive significant funds through the settlement, it cannot be said that the Trustee has

8    not acted in the best interests of the estate.  This settlement will benefit the estate and

9    the remaining creditors and will end a potentially costly contested matter.

10         **B.       The Difficulties, if any, to be Encountered in the Matter of**

11                    **Collection**

12         Of obvious concern to the Trustee was the possibility that any judgment

13   awarded by the Court after the commencement of litigation would not be collectable.

14   Here, since Province retained the General Assignment Fee in trust, the Trustee was not

15   concerned about the collectability of any judgment.  However, there was no assurance

16   that the Trustee would prevail in recovering the disputed portion of the fee in the first

17   instance.  And even if the Trustee was successful, questions remained regarding the

18   timing of any recovery of a judgment from Province, since it almost certainly would

19   appeal any adverse ruling.  Therefore, even if the Trustee prevailed in recovering a

20   portion of the General Assignment Fee, there remained the concern of the timing of

21   recovery.  Hence, the Trustee was required to factor into his decision the likelihood of

22   recovering on a judgment, especially when weighed against the continuing administrative

23   costs that would need to be incurred to obtain a judgment.

24         **C.       The Complexity of the Litigation and the Expense,**

25                    **Inconvenience and Delay Necessarily Attending It**

26         The rationale behind public policy favoring pre-trial settlements is that

27   litigation, depending upon its complexity, can occupy a court's docket for years on end,

28   depleting the resources of the parties and the taxpayers while rendering meaningful relief

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    increasingly elusive.  In a bankruptcy context, such litigation costs can be particularly

2    burdensome on the bankruptcy estate given the financial instability of the estate.  See In

3    re Grau, 267 B.R. 896 (Bankr. S.D. Fla. 2001).  Here, the complexity of insuring collection

4    of a judgment, assuming the Trustee prevailed, dictated that the Trustee seek a path

5    towards settlement.  The legal and factual issues raised in an anticipated adversary

6    proceeding would be factually complex, contested, and would be extremely time

7    consuming and costly for the estate to prosecute and defend through possible appeal.

8            Moreover, the chapter 7 case has been pending on the court's docket for

9    more than two years.  If the Trustee was forced to file and then prosecute the action to

10   recover the disputed portion of the General Assignment Fee, it is possible that at least

11   one more year would pass before any judgment was rendered.  As noted, it is also

12   possible that any judgment obtained by the Trustee would be the subject of an appeal

13   and further litigation for years to come.  During this time, administrative fees and costs

14   would continue to escalate.  As a result, the Trustee's decision to put an end to the

15   dispute with Province will benefit the estate and creditors alike.

16                    **D.        The Paramount Interest of Creditors**

17           The paramount interest of creditors which a bankruptcy court must consider

18   in deciding whether to approve a proposed compromise, generally reflects not only the

19   desire of creditors to obtain the maximum possible recovery, but also their competing

20   desire that the recovery should occur in the least amount of time possible.  See In re

21   Marples, 266 B.R. 202, 206 (Bankr. D. Idaho 2001); In re Lake City RV, Inc., 226 B.R.

22   241, 243-44 (Bankr. D. Idaho 1998).  Here, the estate is not in the position to fund

23   lengthy, difficult, and uncertain litigation.  The settlement resolves the competing and

24   existing claims between the parties in a manner meant to avoid further administrative

25   expenses.  The settlement also will facilitate the distribution of assets in an orderly

26   fashion in a manner which will allow the chapter 7 case to be timely administered.

27           As noted earlier, generally, a court should approve a proposed settlement

28   so long as it is above "the lowest point in the range of reasonableness", giving deference

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    to a trustee's reasonable business judgment.  See <u>In re Receivership Estate of Indian</u>

2    <u>Motorcycle Mfg., Inc.</u>, 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial

3    deference to the business judgment of a bankruptcy trustee when deciding whether to

4    approve a settlement").  Since the Agreement adds value to the estate, the settlement far

5    exceeds that threshold standard, and should be approved.

6           In sum, the settlement with Province prevents any further expenditure of

7    time and legal fees in disputing the General Assignment Fee, will result in a substantial

8    increase in dividends to other similarly situated creditors, and does not fall below the

9    lowest point in the range of reasonableness.  As such, the Trustee believes that the

10    Agreement is reasonable and should be approved by the Court.

**V.**

**<u>CONCLUSION</u>**

13           Based on the foregoing, the Trustee respectfully requests that the Court

14    grant the Motion in its entirety, approve the Agreement, and for such other and further

15    relief as the Court deems appropriate under the circumstances.

16    DATED: February 26, 2020    **Sulmeyer**Kupetz
                                A Professional Corporation

19                            By: <u>*/s/ Daniel A. Lev*</u>

20                                Daniel A. Lev
                            Attorneys for Howard M. Ehrenberg, Chapter 7
                            Trustee

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

**<u>DECLARATION OF HOWARD M. EHRENBERG</u>**

I, Howard M. Ehrenberg, declare:

1.      I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Kandy Kiss of California, Inc. (the "Debtor").  Each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.

2.      Through my "Chapter 7 Trustee's Motion for Order Authorizing Compromise of Controversy Re Province, Inc. Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; Memorandum of Points and Authorities; Declaration of Howard M. Ehrenberg in Support Thereof" (the "Motion"), I seek, among other things, an order authorizing and approving, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013, that certain "Settlement Agreement and Mutual General Release" (the "Agreement") by and between me, in my capacity as trustee, on the one hand, and Province, Inc., a Nevada corporation ("Province"), on the other hand, pursuant to which Province and I have agreed to compromise the disputes between the parties.  In sum, according to the Agreement, Province shall pay the estate the total sum of $100,000 from the $346,350.33 fee Province contends it earned and is entitled to retain pursuant to the terms of the general assignment between Province and the Debtor.  A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

3.      After my appointment as trustee, I learned that, on January 16, 2017, prior to the commencement of an involuntary petition against the Debtor, the Debtor executed an "Assignment for the Benefit of Creditors" (the "General Assignment") in favor of Province, as assignee, dated January 16, 2017.  The next day, Province and Zita Apparel, Inc., a California corporation ("Zita") entered into that certain "Asset Purchase Agreement" (the "Zita Purchase Agreement"), pursuant to which, among other things, Zita acquired certain assets of the Debtor's assignment estate for the total purchase price of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   $350,000.  Province contends that, pursuant to the terms of general assignment

2   documents, it earned a fee of $346,350.33 (the "General Assignment Fee").

3       4.    After investigating and analyzing the General Assignment documents

4   and the Zita transaction, I determined that there were grounds to recover a portion of the

5   Province General Assignment Fee.  However, rather than commence a formal adversary

6   proceeding, Province and I engaged in negotiations in an effort to resolve my concerns

7   with respect to the fee.  As a result of these discussions, Province and I entered into the

8   Agreement according to which Province shall pay the estate $100,000 of the $346,350.33

9   being held by Province.  The parties will also exchange limited releases.  I now seek

10  approval of the compromise embodied in the Agreement, as it is my belief that the

11  settlement satisfies each of the prerequisites adopted by the Ninth Circuit.

12      5.    Specifically, I contend, without limitation, that based on the limited

13  amount of services Province provided, and the subsequent series of events leading to my

14  appointment, Province was not entitled to an earned fee of $346,350.33.  However,

15  Province disputes my contentions and asserts that the General Assignment Fee is

16  contractual in nature, is reasonable and appropriate based on the services rendered by

17  Province as assignee, and the fee was accurately calculated according to the terms of

18  the General Assignment documents.  While I was confident in my position, given the

19  defenses being asserted by Province, the costs of commencing and prosecuting an

20  action through trial would be cost-prohibitive.

21      6.    In light of the fact that the estate will receive significant funds through

22  the settlement, it cannot be said that I have not acted in the best interests of the estate.

23  This settlement will benefit the estate and the remaining creditors and will end a

24  potentially costly contested matter.

25      7.    Of obvious concern to me was the possibility that any judgment

26  awarded by the Court after the commencement of litigation would not be collectable.

27  Here, since Province retained the General Assignment Fee in trust, I was not concerned

28  about the collectability of any judgment.  However, there was no assurance that I would

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    prevail in recovering the disputed portion of the fee in the first instance.  And even if I was

2    successful, questions remained regarding the timing of any recovery of a judgment from

3    Province, since it almost certainly would appeal any adverse ruling.  Therefore, even if I

4    prevailed in recovering a portion of the General Assignment Fee, there remained the

5    concern of the timing of recovery.  Hence, I was required to factor into my decision the

6    likelihood of recovering on a judgment, especially when weighed against the continuing

7    administrative costs that would need to be incurred to obtain a judgment.

8          8.    In addition, the complexity of insuring collection of a judgment,

9    assuming I prevailed, dictated that I seek a path towards settlement.  The legal and

10   factual issues raised in an anticipated adversary proceeding would be factually complex,

11   contested, and would be extremely time consuming and costly for the estate to prosecute

12   and defend through possible appeal.  Moreover, the chapter 7 case has been pending on

13   the court's docket for more than two years.  If I was forced to file and then prosecute the

14   action to recover the disputed portion of the General Assignment Fee, it is possible that

15   at least one more year would pass before any judgment was rendered.  It is also possible

16   that any judgment obtained by the estate would be the subject of an appeal and further

17   litigation for years to come.  During this time, administrative fees and costs would

18   continue to escalate.  As a result, my decision to put an end to the dispute with Province

19   will benefit the estate and creditors alike.

20         9.    Finally, the estate is not in the position to fund lengthy, difficult, and

21   uncertain litigation.  The settlement resolves the competing and existing claims between

22   the parties in a manner meant to avoid further administrative expenses.  The settlement

23   also will facilitate the distribution of assets in an orderly fashion in a manner which will

24   allow the chapter 7 case to be timely administered.

25         10.   In sum, the settlement with Province prevents any further

26   expenditure of time and legal fees in disputing the General Assignment Fee, will result in

27   a substantial increase in dividends to other similarly situated creditors, and does not fall

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    below the lowest point in the range of reasonableness.  As such, I believe that the

2    Agreement is reasonable and should be approved by the Court.

3             I declare under penalty of perjury under the laws of the United States of

4    America that the foregoing is true and correct.

5             Executed this 25th day of February, 2020, at Los Angeles, California.

6

7    _____

8    Howard M. Ehrenberg, Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2696037v1

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE (the "**AGREEMENT**") is entered into as of February 20, 2020, by and between Howard M. Ehrenberg (the "**TRUSTEE**"), in his sole and exclusive capacity as the duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Kandy Kiss of California, Inc. (the "**DEBTOR**"), on the one hand, and Province, Inc., a Nevada corporation ("**PROVINCE**"), on the other hand, as follows:

## RECITALS

A.    **WHEREAS, PROVINCE** was the assignee for the benefit of creditors of the **DEBTOR** pursuant to an "Assignment for the Benefit of Creditors" (the "**GENERAL ASSIGNMENT**") executed by and between the **DEBTOR**, as assignor, and **PROVINCE**, as assignee, dated January 16, 2017.

B.    **WHEREAS,** on January 17, 2017, **PROVINCE**, as assignee and seller, and Zita Apparel, Inc., a California corporation ("**ZITA**"), as buyer, entered into that certain "Asset Purchase Agreement" (the "**ZITA PURCHASE AGREEMENT**"), pursuant to which, among other things, **ZITA** acquired certain assets of the **DEBTOR'S** assignment estate for the total purchase price of $350,000.

C.    **WHEREAS,** subsequent to the execution of the **ZITA PURCHASE AGREEMENT, PROVINCE** and **ZITA** consummated the transaction set forth in the **ZITA PURCHASE AGREEMENT.**

D.    **WHEREAS,** on February 14, 2017, petitioning creditors Apex Logistics International LAX Inc., High Hope Trading (HK) Limited, IDFIX, Inc., Kucuhead, Shol Inc., Texking Trading Ltd., Tu Pacific, LLC, and RM Global LLC (the "**PETITIONING CREDITORS**"), filed an involuntary petition for relief against the **DEBTOR** under chapter 7 of title 11 of the United States Code (the "**BANKRUPTCY CODE**") commencing this case (the "**CASE**") in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "**BANKRUPTCY COURT**").

E.    **WHEREAS,** on February 15, 2017, the clerk of the court issued an involuntary summons [Docket No. 3].

F.    **WHEREAS,** on March 8, 2017, **PROVINCE** filed a motion to dismiss the **CASE** (the "**MOTION TO DISMISS**") [Docket No. 16]. On April 7, 2017, the **PETITIONING CREDITORS** filed an opposition to the **MOTION TO DISMISS** [Docket No. 30]. On May 8, 2017, the **BANKRUPTCY COURT** entered an order denying, in part, the **MOTION TO DISMISS** [Docket No. 46]. On May 31, 2017, the **BANKRUPTCY COURT** entered a scheduling order regarding the remaining issues in the **MOTION TO DISMISS** [Docket No. 51]. On September 13, 2017, the **DEBTOR** and **PROVINCE** filed their consent to entry of an order for relief in the **CASE** [Docket No. 61]. On September 19, 2017, the **BANKRUPTCY COURT** entered its "Order for Relief" (the "**ORDER FOR RELIEF**") [Docket No. 62].

**G.**    **WHEREAS,** on March 14, 2017, creditor RM Global Textile Inc. filed a joinder to the involuntary as an additional petitioning creditor [Docket No. 20].

**H.**    **WHEREAS,** on September 21, 2017, the Office of the United States Trustee (the "**OUST**") appointed David K. Gottlieb (the "**PREDECESSOR TRUSTEE**") as the interim chapter 7 trustee in the **CASE** in accordance with 11 U.S.C. § 701(a) [Docket No. 68].  On October 4, 2017, the **PREDECESSOR TRUSTEE** filed a "Supplemental Statement of Disinterestedness" (the "**SUPPLEMENT**") pursuant to which the **PREDECESSOR TRUSTEE** disclosed that he subleased certain office space from **PROVINCE**, the aforementioned assignee.

**I.**    **WHEREAS,** on October 6, 2017, at the initial Section 341(a) creditor's meeting, the **PETITIONING CREDITORS** unanimously elected Howard M. Ehrenberg (the "**TRUSTEE**") as the trustee in accordance with 11 U.S.C. § 702.  Accordingly, on October 12, 2017, the **OUST** filed its "Report of Disputed Election of Trustee" (the "**OUST REPORT**"). Pursuant to Rule 2003(d)(2) of the Federal Rules of Bankruptcy Procedure, a motion for the resolution of the dispute was required to be filed no later than fourteen days following the date of the **OUST REPORT**.  On October 26, 2017, the **PETITIONING CREDITORS** timely caused to be filed their "Notice of Motion and Motion of Voting Creditors to (1) Certify Election of Howard M. Ehrenberg as Chapter 7 Trustee, or (2) Remove David K. Gottlieb From Acting As Chapter 7 Trustee" (the "**RESOLUTION MOTION**") [Docket No. 87].  The **RESOLUTION MOTION** sought to certify the **TRUSTEE** as the permanent trustee based upon the results of the election held on October 12, 2017.  Rather than contest the **RESOLUTION MOTION**, thereby causing further delay to creditor recovery, the **PREDECESSOR TRUSTEE** elected to withdraw without conceding any of the allegations of the **RESOLUTION MOTION**.  As such, on November 3, 2017, the Predecessor Trustee filed his "Notice of Withdrawal of Appointment of Trustee" [Docket No. 90].

**J.**    **WHEREAS,** as a result, on November 6, 2017, the **OUST** filed its "Status Report of United States Trustee on Report of Disputed Election" (the "**STATUS REPORT**") [Docket No. 92].  In the **STATUS REPORT**, the **OUST** indicated that, in light of the **PREDECESSOR TRUSTEE'S** withdrawal, the **OUST** would proceed with the appointment of the **TRUSTEE** as the permanent trustee.  On the same day - November 6, 2017 - notice of the **TRUSTEE'S** appointment and qualification under 11 U.S.C. § 322 was filed by the **OUST** [Docket No. 93].

**K.**    **WHEREAS,** subsequent to the **TRUSTEE'S** appointment, **PROVINCE** remitted the balance of funds from the **DEBTOR'S** assignment estate to the **TRUSTEE**, provided, however, that **PROVINCE** withheld the total amount of $346,350.33 in its trust account which **PROVINCE** contends represents the fee due and owing to **PROVINCE** pursuant to the **GENERAL ASSIGNMENT** (the "**GENERAL ASSIGNMENT FEE**").

**L.**    **WHEREAS,** pursuant to the **GENERAL ASSIGNMENT**, the **DEBTOR** agreed as follows:  that the term "a reasonable fee to Assignee" is defined as, and includes, the following: (a) an administration fee computed on the basis of the total monies distributed in connection with the **GENERAL ASSIGNMENT** and for the assembly, inventorying, collection, and liquidation of the assets assigned, in accordance with the following schedule, to wit: an initial retainer of $35,000, and a fee of 15% total monies distributed shall apply; (b) the reimbursement of all expenses incurred as a result of **PROVINCE'S** administration out of the

proceeds generated therefrom; (c) a further fee equal to any and all interest earned and received by **PROVINCE** on any trust and other funds in its hands and arising from the **GENERAL ASSIGNMENT**; and (d) in addition to all of the foregoing, when applicable, in the opinion of the Board of Directors of **PROVINCE**, an additional and reasonable fee may be taken for special, unusual, or extraordinary services actually performed by **PROVINCE** in connection with the operation, management, preservation, or administration of the property of the **DEBTOR'S** assignment estate, and, in this connection the Board of Directors of **PROVINCE**, or the President of **PROVINCE**, is given the right and discretion to determine the nature and extent of such special, unusual, or extraordinary services, and the amount of additional fees in connection therewith. Moreover, the **GENERAL ASSIGNMENT** further provides that the fees due and owing to **PROVINCE** shall be paid from the property assigned, and from all of the proceeds thereof and from any interest, income, and increments and any additions thereto.

**M.** **WHEREAS**, the **TRUSTEE** has investigated the **GENERAL ASSIGNMENT**, the **ZITA PURCHASE AGREEMENT**, and **PROVINCE'S** contentions regarding the **GENERAL ASSIGNMENT FEE**, and disputes that **PROVINCE** is entitled to the amount of $346,350.33. **PROVINCE**, on the other hand, disputes the **TRUSTEE'S** contentions and contends that it is entitled to the amount of $346,350.33 pursuant to the **GENERAL ASSIGNMENT**.

**N.** **WHEREAS**, the **TRUSTEE** and **PROVINCE** now desire to resolve the disputes between the parties and to avoid the uncertainty, costs, and expenses associated with adjudication of the **TRUSTEE'S** potential claims to recover all or a portion of the **GENERAL ASSIGNMENT FEE**.

## PROVISIONS

**NOW, THEREFORE**, in consideration of the foregoing Recitals and of the mutual agreements, covenants, and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the parties, the parties hereto agree as follows:

1.    **Recitals.** The recitals contained in paragraphs A through N, above (the "**RECITALS**"), are an integral part of this **AGREEMENT** and are incorporated herein by reference.

2.    **Rules of Construction.** The following rules of construction govern and apply to the interpretation and construction of this **AGREEMENT**:

    2.1.    Whenever the name of the **TRUSTEE** is used, it includes all current and former agents, employees, attorneys, accountants, successors and assigns of the **TRUSTEE** and all other persons and entities for whose acts and omissions the **TRUSTEE** may be held liable.

    2.2.    Whenever the name of **PROVINCE** is used, it includes all parents, subsidiaries, related and affiliated entities, all current and former agents, employees, officers and directors, successors and assigns of **PROVINCE**, as applicable, and all other persons and entities for whose acts and omissions **PROVINCE** may be held liable.

**2.3.**    Each party acknowledges that it has participated in the drafting of this **AGREEMENT** and reviewed the terms of the **AGREEMENT** and as such, no rule of construction shall apply in any interpretation of this **AGREEMENT** which might result in this **AGREEMENT** being construed in favor or against either of them, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

**2.4.**    The underscored word or words appearing at the commencement of sections of this **AGREEMENT** are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections.

**3.**    <u>Settlement.</u> In consideration for the promises made in this **AGREEMENT**, including, without limitation, settlement of any all claims of the Debtor's bankruptcy estate against **PROVINCE**, with prejudice, **PROVINCE** shall pay the **TRUSTEE** on behalf of the Debtor's bankruptcy estate the total amount of One Hundred Thousand Dollars and Zero Cents ($100,000.00) (the "**SETTLEMENT PAYMENT**"). The **SETTLEMENT PAYMENT** shall be due on or before seven (7) calendar days following the entry of a final order of the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving this **AGREEMENT**. The **SETTLEMENT PAYMENT** shall be made by wire, or a business or cashier's check made payable to "Howard M. Ehrenberg, Chapter 7 Trustee for Kandy Kiss of California, Inc.", and delivering said business or cashier's check to the **TRUSTEE'S** counsel of record, Daniel A. Lev, Esq., **Sulmeyer**Kupetz, A Professional Corporation, 333 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

**4.**    <u>Mutual Release.</u> Except for: (a) a breach of this **AGREEMENT** and claims arising by reason of such breach; (b) enforcement of rights, obligations, and duties arising under this **AGREEMENT**; and (c) the satisfaction of the executory provisions of this **AGREEMENT**, in consideration for the provisions of this **AGREEMENT**, the **TRUSTEE**, on the one side, and **PROVINCE**, on the other side, do hereby fully and finally compromise and settle with, and forever release, remise, relieve, waive, relinquish, and discharge each other from any and all claims, complaints, rights, manner of action or actions, cause or causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees) sums of money, controversies, damages, accounts, agreements, covenants, contracts, judgments, reckonings, liens and liabilities of every kind and nature whatsoever, whether at law or in equity, whether based upon statute, common law or otherwise, whether matured, contingent or non-contingent, whether direct or indirect, whether known or unknown, whether suspected or unsuspected, whether or not hidden and without regard to the subsequent discovery or existence of different or additional facts, which the **TRUSTEE** and **PROVINCE** ever had, now have, or may claim to have against each other (the "**CLAIM(S)**") arising out of, based on, asserted in, or in connection with any matter, cause, claim, or thing or related to the **GENERAL ASSIGNMENT**, the **ZITA PURCHASE AGREEMENT**, and the **GENERAL ASSIGNMENT FEE**, any of the above now accrued or hereafter accruing.

**5.**    <u>Final Release and Bar.</u> The parties hereto hereby acknowledge that it is their intention, that this **AGREEMENT** shall be effective as a full and final release of and as a bar with prejudice to each and every **CLAIM**, which the parties have or had against one another as is

applicable, directly or indirectly. In connection with such waiver and relinquishment, the parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this **AGREEMENT**, but that it is their intention to hereby fully, finally, absolutely, and forever release any and all **CLAIMS** released pursuant to Section 4, above, which now do exist, may exist or heretofore have existed between them, and that in furtherance of such intentions the release as given herein by the parties, shall be and remain in effect as a full and complete release of the **CLAIMS** released in Section 4 above, notwithstanding the discovery of any such different or additional facts.

Notwithstanding the discovery of any such additional or different facts, the parties certify that they have read Section 1542 of the California Civil Code set forth below:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The parties hereto, do hereby waive application of Section 1542 of the California Civil Code and any other statutes, common law rights, rules or the like which may operate to limit the intent of this **AGREEMENT** with respect to the **CLAIMS** released in Section 4 above. The parties understand and acknowledge the significance and consequence of this waiver of Section 1542 of the California Civil Code is that even if they should eventually suffer additional damages on account of the **CLAIMS** released in Section 4 above, they will not be permitted to make any claim for such damages.

6.    <u>**Covenant Not to Sue.**</u> The **TRUSTEE** and **PROVINCE** hereby covenant and agree that they will forever refrain and forbear from commencing, instituting, or prosecuting any lawsuit action or other proceeding against each other, based on, arising out of, or in connection with the **CLAIMS** released in Section 4, above. Notwithstanding the foregoing, nothing contained in this **AGREEMENT** shall preclude the **TRUSTEE** or **PROVINCE** from exercising their respective rights in the event the other party breaches any of its obligations under this **AGREEMENT**.

7.    <u>**Denial of Liability.**</u> Liability for any claims that the **TRUSTEE** has asserted or may assert is denied by **PROVINCE**. This **AGREEMENT** is a compromise of disputed claims and shall never be construed as an admission of liability or responsibility for any purpose by either party.

8.    <u>**Mutual Warranties and Representations.**</u> The **TRUSTEE** and **PROVINCE** hereby represent and warrant to each other that as of the date of this **AGREEMENT**:

8.1 The **TRUSTEE** and **PROVINCE** have each consulted with, or have had the opportunity to consult with, an attorney of their choosing, and each of them has carefully

read this **AGREEMENT**, fully understands the **AGREEMENT** and its terms and provisions, and each of them either is relying upon legal advice in entering into this **AGREEMENT** voluntarily or has determined, without being under any duress or coercion, not to rely upon legal advice in entering into this **AGREEMENT**.

**8.2** The **TRUSTEE** and **PROVINCE** have each made such investigation of the facts and matters pertaining to this **AGREEMENT** and settlement of the disputes raised herein as each of them has deemed necessary.

**8.3** Except for the statements, representations and promises contained in this **AGREEMENT**, the parties hereto are not relying upon any statement, representation, or promise from the other party hereto or any of the other party's agents, employees, representatives, or attorneys in entering into this **AGREEMENT**.

**8.4** Each person executing this **AGREEMENT** on behalf of a party hereto has been duly authorized to execute this **AGREEMENT** on behalf of the party and to bind the party to the terms and provisions of this **AGREEMENT** by appropriate appointment, delegation of authority, corporate by-laws or board resolutions.

**8.5** The **TRUSTEE** represents and warrants, which representation and warranty is a material inducement to its execution of the **AGREEMENT**, that, in his capacity as chapter 7 trustee, he is the sole holder of the **CLAIMS** which are the subject of this **AGREEMENT**, with the sole right to initiate, litigate, and compromise said **CLAIMS**.

**8.6** As to the matters addressed herein, this **AGREEMENT** is intended to be final and binding upon the parties hereto, regardless of any mistake of fact or law made by the parties hereto. The **TRUSTEE** and **PROVINCE** each assume the risk of any mistake of fact or law in relation to this **AGREEMENT** and may not set aside this **AGREEMENT**, or any portion thereof based on the subsequent discovery of any such mistake of fact or law.

**9.** **Complete Agreement.** This **AGREEMENT** contains the entire agreement between the **TRUSTEE** and **PROVINCE** with respect to the matters addressed in this **AGREEMENT** and the **AGREEMENT** supersedes all prior agreements, written or oral. Should a dispute arise under this **AGREEMENT**, neither the **TRUSTEE** nor **PROVINCE** may introduce evidence of any alleged prior or contemporaneous agreements or understandings to alter the terms of this **AGREEMENT**.

**10.** **No Oral Modifications.** This **AGREEMENT** may be amended only in a writing signed by the **TRUSTEE** and **PROVINCE**.

**11.** **Retention of Jurisdiction.** The **BANKRUPTCY COURT** shall retain exclusive jurisdiction to resolve any controversy or claim arising out of relating to this **AGREEMENT**.

**12.** **Attorneys' Fees and Costs.** The **TRUSTEE** and **PROVINCE** shall each bear their own costs and attorneys' fees, if any, with regard to any aspect of the **TRUSTEE'S CLAIMS** against **PROVINCE**, including, the negotiation, drafting, and execution of this **AGREEMENT**.

However, the **TRUSTEE** and **PROVINCE** agree that, in the event of any legal or equitable action or arbitration proceeding required to enforce or defend this **AGREEMENT**, the prevailing party as that term is defined by California Civil Code § 1717, shall be entitled to an award of its attorneys' fees, costs, and expenses incurred in connection with the enforcement or defense of this **AGREEMENT**, in addition to any other damages it may suffer as a result of the violation or breach of this **AGREEMENT**, or other relief to which it may be entitled.

13.     **Successors.** This **AGREEMENT** shall bind and inure to the benefit of the parties hereto and their respective successors, predecessors, and assigns.

14.     **Severability.** Should any provision of this **AGREEMENT** be unenforceable, those provisions shall be considered severable, and the remaining provisions shall remain in effect.

15.     **Governing Law.** This **AGREEMENT** shall be construed and governed by the laws of the State of California.

16.     **Counterparts.** This **AGREEMENT** may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This **AGREEMENT** shall not be binding until signed by both parties.

17.     **Further Assurances.** The **TRUSTEE** and **PROVINCE** hereby agree, on request of the other party hereto, to perform all acts reasonably necessary, including execution of further documents, to effectuate the intent of this **AGREEMENT**.

18.     **Good Faith and Fair Dealing.** This **AGREEMENT** was negotiated in good faith, at arm's length, and for good, reasonable, and fair consideration as to all parties.

*[Remainder of page intentionally left blank]*

19.    **Bankruptcy Court Approval.**  This **AGREEMENT** is explicitly conditioned upon entry of an order by the **BANKRUPTCY COURT**, or other court of competent jurisdiction, approving the terms and conditions of this **AGREEMENT**.  In the event the **BANKRUPTCY COURT**, or other court of competent jurisdiction, does not approve this **AGREEMENT**, it will be null and void.

**IN WITNESS WHEREOF**, the parties hereto have executed this **SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE** effective as of the first date written above.

> **HOWARD M. EHRENBERG, Solely in his capacity as chapter 7 trustee for the estate of the debtor Kandy Kiss of California, Inc.**
>
> By: _____
> Howard M. Ehrenberg, Chapter 7 Trustee
>
> **PROVINCE, INC., a Nevada corporation**
>
> By: _____
>
> Its: Amanda Demby Swift
>      Managing Director, Province

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING COMPROMISE OF CONTROVERSY RE PROVINCE, INC. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HOWARD M. EHRENBERG IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 26, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jessica L Bagdanov on behalf of Debtor Kandy Kiss of California, Inc.
jbagdanov@bg.law, ecf@bg.law

Bernard D Bollinger, Jr on behalf of Cross Defendant Secret Charm, LLC, Adir Haroni, Cathy King, Lauri Hamer and Melissa Krupa
bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com

Peter M Bransten on behalf of Other Professional Courtesy NEF
pbransten@glaserweil.com, dsanchez@glaserweil.com

Peter M Bransten on behalf of Petitioning Creditor Mauricio Betancur
pbransten@glaserweil.com, dsanchez@glaserweil.com

Lynn Brown on behalf of Creditor American Express Travel Related Services Company, Inc.
notices@becket-lee.com

Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)
russell.clementson@usdoj.gov

Alan J Cohen on behalf of Creditor Mark Raskin
acohen@cohenlawla.com

Cynthia M Cohen on behalf of Other Professional Courtesy NEF
ccohen@brownwhitelaw.com

Cynthia M Cohen on behalf of Petitioning Creditor Kucuhead
ccohen@brownwhitelaw.com

Cynthia M Cohen on behalf of Petitioning Creditor Mauricio Betancur
ccohen@brownwhitelaw.com

Cynthia M Cohen on behalf of Plaintiff Mauricio Betancur
ccohen@brownwhitelaw.com

Howard M Ehrenberg (TR)
ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com;hehrenberg@ecf.inforuptcy.com

Beth Gaschen on behalf of Debtor Kandy Kiss of California, Inc.
bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com

---

DAL 2616923v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Beth Gaschen on behalf of Interested Party Province, Inc.
bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com

Beth Gaschen on behalf of Other Professional Courtesy NEF
bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com

Jeffrey I Golden on behalf of Interested Party Province, Inc.
jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com

Steven T Gubner on behalf of Debtor Kandy Kiss of California, Inc.
sgubner@bg.law, ecf@bg.law

Steven T Gubner on behalf of Interested Party Courtesy NEF
sgubner@bg.law, ecf@bg.law

Steven T Gubner on behalf of Other Professional Brutzkus Gubner
sgubner@bg.law, ecf@bg.law

Steven T Gubner on behalf of Other Professional Courtesy NEF
sgubner@bg.law, ecf@bg.law

Steven T Gubner on behalf of Trustee Howard M Ehrenberg (TR)
sgubner@bg.law, ecf@bg.law

Sandra Khalili on behalf of Interested Party Resch Polster & Berger LLP
skhalili@rpblaw.com, maltamirano@rpblaw.com

Paul J Kurtzhall on behalf of Other Professional Courtesy NEF
paul@hkwllp.com, scottm@hkwllp.com;G66353@notify.cincompass.com

Paul J Kurtzhall on behalf of Petitioning Creditor IDFIX, Inc.
paul@hkwllp.com, scottm@hkwllp.com;G66353@notify.cincompass.com

Matthew A Lesnick on behalf of Petitioning Creditor Apex Logistics International LAX Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor High Hope Trading (HK) Limited
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor IDFIX, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Kucuhead
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor RM Global Textile Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Shol Inc
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Texking Trading Ltd
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Tu Pacific, LLC
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

DAL 2616923v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                 **F 9013-3.1.PROOF.SERVICE**

Matthew A Lesnick on behalf of Petitioning Creditor Ch Moon
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Christopher Clifford
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor David Shi
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Elsie Qian
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Grace Wang
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Mauricio Betancur
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick on behalf of Petitioning Creditor Thao Uyen
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Daniel A Lev on behalf of Other Professional Courtesy NEF
dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com

Daniel A Lev on behalf of Trustee Howard M Ehrenberg (TR)
dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com;dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com

Lloyd S Mann on behalf of Other Professional Courtesy NEF
lmann@mannzarpas.com

Lloyd S Mann on behalf of Petitioning Creditor Kucuhead
lmann@mannzarpas.com

Lloyd S Mann on behalf of Petitioning Creditor Mauricio Betancur
lmann@mannzarpas.com

Susan I Montgomery on behalf of Creditor Thomas R. Akin
susan@simontgomerylaw.com,
assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr71631@notify.bestcase.com

Kurt Ramlo on behalf of Interested Party Courtesy NEF
kr@lnbyb.com, kr@ecf.inforuptcy.com

Howard D Ruddell on behalf of Creditor Target Corporation
, lorena.lazheztter@faegrebd.com

Robyn B Sokol on behalf of Interested Party Moustris Entertainment, Inc.
ecf@bg.law, rsokol@bg.law

Robyn B Sokol on behalf of Interested Party Caroline Ann Gilchrist
ecf@bg.law, rsokol@bg.law

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

---

DAL 2616923v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**:

On (*date*) February 26, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Office of the United States Trustee
915 Wilshire Boulevard, Suite 1850
Los Angeles, CA 90017

☐ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 26, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Victoria S. Kaufman
U.S. Bankruptcy Court
Bin on 1st Floor outside entry to Intake Section
21041 Burbank Blvd.
Woodland Hills, CA 91367

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| February 26, 2020 | Denise Walker | /s/Denise Walker |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DAL 2616923v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**